M. H. DEPUE, Respondent, v. THE SWIFT 1904 CLOTHES WASHER COMPANY et al., Appellants.

**Springfield Court of Appeals, June 6, 1910.**

1. **FRAUD: False Representations: Contracts: Public Policy.** In a suit for damages growing out of alleged false representations and deceit practiced upon plaintiff in the sale to him by defendants of an "agency contract" for the sale of a patent clothes washer, and which also included the right to sell other agency contracts, the judgment in plaintiff's favor is sustained is being justified under the evidence, and it is further upheld on the ground of public policy.

2. ———: **Delay in Discovery of Fraud: Right to Recover.** It cannot be said when a man is deceived that the length of time his seducer may be able to keep him under his influence will deprive him of his right to recover when he finally awakes and seeks redress.

Appeal from Greene Circuit Court.—*Hon. Alfred Page,* Judge.

AFFIRMED.

*McCollum & Johnson* for appellant.

The essential elements of fraudulent representations which will entitle a party to recover damages therefor are, first, that the false representations were of material matters; second, that he believed them to be true; third, that his reliance on them was an act of ordinary prudence; and, fourth, that they influenced his actions. Foundry Co. v. Heskett, 125 Mo. App. 516; Jones v. Rush, 156 Mo. 364; Wade v. Ringo, 122 Mo. 322; Harrison v. Walden, 89 Mo. App. 164; Chase v. Rush, 90 Mo. App. 25.

*A. B. Lovan* for respondent.

Respondent denies that he knew that appellants' business was a fraud on the public at the time he was trying to do business under one of the contracts. But even if appellants' contention is true that respondent did know it was a fraud, respondent was entitled to recover under the facts in this case. Foundry Co. v. Heskett, 125 Mo. App. 516; Hobbs v. Boatright, 195 Mo. 693; Shinnabarger v. Shelton & Lane, 41 Mo. App. 155.

COX, J.—Action for damages for fraud alleged to have been perpetrated upon the plaintiff in the sale of what is known as an "Agency Contract" for the Swift 1904 Clothes Washer. Trial before the court, jury being waived, issues found for plaintiff and judgment rendered accordingly for eight hundred dollars, and defendant has appealed. It seems that plaintiff was induced by defendant, Crooker, to purchase one of these agency contracts at the agreed price of fifteen hundred dollars for which he paid eight hundred dollars, and executed notes for seven hundred dollars. The contract granted the purchaser the privilege of selling family rights for the said washer, and of selling minor, standard, special and patentees' agency of said letters patent, and appointing six sub-agents to retail said family rights for the said washer in the United States. The minor agencies which the purchaser of this contract was privileged to sell were to be sold for one hundred and fifty dollars; standard agencies for five hundred dollars; special agencies fifteen hundred dollars, and patentees' agencies five thousand dollars. The purchaser was also authorized to sell contracts similar to the one he had bought without any limit. The machines were not to be sold for less than five dollars, and were to be furnished to the party desir-

ing to sell them by the company for one dollar. Accompanying this contract was a power of attorney, authorizing the plaintiff to sign the name of the company patentee to any contracts that he might sell. The evidence discloses that the home of the plaintiff was in New Jersey. That in August, 1908, he was in Springfield, Missouri, where he met defendant, Crooker, who undertook to interest him in the purchase of a contract, and after much solicitation and many representations as to the large sums of money to be made out of the enterprise, and representations as to the large sums of money that had been made by other parties who had purchased contracts, and representations as to the salability of the machines and the great numbers of them that had been sold by other agents, finally succeeded in inducing plaintiff to buy the smallest contract, and pay therefore the sum of one hundred and fifty dollars. Acting under this contract the plaintiff undertook to sell machines, and after having spent considerable time in the effort and finding that he was unable to make any sales, came back to Crooker, and complained that he could not succeed in his efforts to sell the machine. Crooker then, by another turn, succeeded in convincing plaintiff that the contract he was operating under was too small, and that if he would buy the fifteen hundred dollar contract his fortune would be assured. The plaintiff was again deceived and bought the fifteen hundred dollar contract, and again went to work, attempting to sell the machines and contracts, attended with the same result as under the former contract, and finally woke up to the realization of the fact that he had been swindled and then brought this suit.

At the trial of this case, the company did not appear, but defendant Crooker appeared and filed an answer in which it was alleged that prior to the sale of this contract to plaintiff, plaintiff had purchased a contract for one hundred and fifty dollars, had operated under it, and became familiar with the merits of the washer, and

knew, as a matter of fact, at the time the contract in suit was executed that the demand for said washing machines was not sufficient to justify investing the large sum of fifteen hundred dollars in said business with the intention of selling the machines for actual delivery, and that he knew at the time that the plan and method of all other parties dealing or engaged in said business was to sell to other parties contracts similar to the one sold by defendant to plaintiff, and that with this knowledge he purchased the contract described in his petition in this case.

The allegations of the petition as to the alluring inducements held out to the plaintiff by the defendant Crooker, and his representations as to the fabulous sums of money that had been made by other agents, under contracts similar to the one he proposed to sell the plaintiff, were amply proven, and it was clearly shown at the trial that there was no merit in the washer. That the entire scheme consisted in seducing victims and inducing them to buy these contracts by representations of the character made to plaintiff in this case. In fact, the theory of the defense in this case is not that the patent was of any value, nor that the washer could be sold upon its merits to anybody, but the defense is bottomed upon the fact that the business of the defendant was that of a schemer engaged in deceiving honest men, and while tacitly conceding that plaintiff was deceived in the purchase of the first contract for one hundred and fifty dollars, contends that he became undeceived before he bought the fifteen hundred dollar contract, and that when he bought it he then, with the knowledge that he then had, became himself a party to the fraudulent schemes that were being foisted upon the people by the defendant.

The evidence shows that the plaintiff acted in good faith. He made no efforts to sell the contracts except in connection with the sale of the machines themselves. He had been induced to believe that the machine had

merit of its own, and his conduct through the entire transaction indicates that he was seeking to do an honest business, and that when he discovered finally that the whole thing was a fraud, and that nothing could be made out of it without pursuing the tactics which the defendant had pursued in deceiving him, he then abandoned the whole matter and brought this suit. On this theory of the case we think the evidence sufficient to warrant the finding of the trial judge, and we will be warranted in upholding his judgment on that ground, for it cannot be said when a man is deceived that the length of time his seducer may be able to keep him under his seductive influence will deprive him of his right to recover if he finally awakes and seeks redress.

If the theory of this case contended for by defendant should be adopted, then, that brings it within the rule announced by the Supreme Court in the case of Hobbs v. Boatright, 195 Mo. 693, 93 S. W. 934, and as a matter of public policy, and for the purpose of throwing some hindrance in the way of defendants in the further prosecution of their infamous business, this judgment ought to be upheld. The judgment will be affirmed. All concur.